**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

John Gilster,  )
 )
      Plaintiff,  ) Case No. 1:14-CV-961
 )
vs.  )
 )
Humana, Inc., et al.,  )
 )
      Defendants.  )

O R D E R

This matter is before the Court on Defendant Humana, Inc. and Humana Insurance Company's motion for summary judgment (Doc. No. 30). For the reasons that follow, Defendants' motion for summary judgment is well-taken and is **GRANTED.**

I. Background

Plaintiff John Gilster was employed by Defendant Humana Insurance Company ("Humana")[1] as a sales representative selling worksite voluntary benefits ("WVB"). Humana hired Plaintiff in 2008 when he was 55 years old. WVB consist of ancillary benefits such as critical illness insurance, disability insurance, and accident insurance. Plaintiff was responsible for selling WVB products to employers with 100 or more employees in the Columbus/Dayton/Cincinnati/Northern Kentucky region and generally met or exceeded his sales goals. The bulk of Plaintiff's sales, however, were made to already-existing Humana clients. A consistent theme of Plaintiff's annual performance reviews was that he needed

---

[1] Plaintiff sued both Humana, Inc. and Humana Marketpoint, Inc. According to Defendants, Plaintiff was employed by Humana Insurance Company and is the only proper defendant in the case. Plaintiff does not appear to dispute this contention. For ease of reference, the Court will refer to the defendants collectively as "Humana."

to develop sales to clients who were not already doing business with Humana.[2]  Plaintiff conceded this point in his deposition.  Plaint. Dep. at 41 (Doc. No. 25, at 12).

In 2013, Humana decided to streamline its WVB sales organization through what it called a "Distribution Transformation," i.e., a reduction-in-force, by combining old sales territories to create new ones and by reducing the number of sales executives.  The distribution transformation was implemented in early 2014 by Point In Time Assessments ("PITA") - supervisors graded employees on a scale of 1 to 5 in seven weighted categories.  The weighted scores were added together for a total score.  Employees were then ranked in descending order and employees with the lowest scores were eliminated until the desired staffing level was achieved.  Doc. No. 34-3, at 17.  In other words, the employee or employees with the highest total score would be selected for the available position or positions.  Employees eliminated in the PITA process were given the opportunity to find other employment with Humana but would otherwise be terminated 60 days after the PITA was completed.

---

[2] See Doc. No. 25-2, at 2 ("John has extensive broker relationships but needs to broaden the reach.") (2008); id. at 5 ("John needs to expand beyond internally generated sales and begin focus on developing additional sources of sales.") (2009); id. at 6 ("Major challenge for John has been and continues to be the development through his own initiative new sources of business.  The majority of business has come through existing medical clients and very little production from the new sales side or independently generated.  Direct prospecting needs to become more of a focus with John.")(2010); id. at 8 ("In 2012, I expect John to be more visible in the marketplace with dozens of agencies and not just a select few.") (2011); id. at 11 ("An improvement could be made in managing existing customers and significant work is needed in developing new business opportunities.")(2012); id. at 12 ("The role that John is in has evolved and while John has served very well as a SME for the sales team and leader of opportunities brought to him[,] John has not done enough to bring in or develop opportunities on his own.") (2012).

In Plaintiff's case, Humana combined Plaintiff's region with the WVB region for Louisville, Kentucky. The Louisville area had two WVB sales executives at that time, Erica Sharp and Sean Rafferty. Humana decided that only one sales representative would be assigned to market WVB products in the region for employers with 300 or more employees. Jennifer Willis was the Louisville area sales director and direct supervisor of Sharp and Rafferty. Willis completed the PITA's for Sharp and Rafferty. Plaintiff's direct supervisor had been Christopher Schubart but Schubart had already been informed that his position was going to be eliminated. Humana decided, therefore, to have Schubart's supervisor, John Sinclair, the midwest group sales manager, complete Plaintiff's PITA.

Sinclair gave Plaintiff a 4 for role knowledge, 2's for productivity and adaptability, and 3's for attendance, work quality, professional and ethical behavior, and interpersonal skills. This resulted in a weighted score of 280. Doc. No. 34-2, at 15. Willis gave Sharp a 3 for productivity and 4's in all of the remaining categories for a weighted score of 380. Id. at 18. Willis gave Rafferty 2's in role knowledge, productivity, and adaptability, 3's in work quality and interpersonal skills, and 4's in attendance and professional and ethical behavior, for a total score of 270. Id. at 19. Because she had the highest PITA score, Sharp was awarded the WVB sales executive role for the new territory. Sharp was about 42 years old at the time.

In his deposition, Sinclair did not recall the basis for most of the ratings he gave Plaintiff. Sinclair Dep. at 54-68 (Doc. No. 28, at 15-18). Sinclair testified that he consulted with Schubart in developing Plaintiff's ranking. Schubart, on the other hand, did not recall Sinclair speaking with him about Plaintiff's PITA. Sinclair did say, however, that he gave

Plaintiff a 2 in productivity, despite the fact that Plaintiff generally met his sales goals, because of his consistent inability or failure to develop new business. Id. at 66-68.

Sharp resigned her role as the sales representative for the new territory a few weeks after accepting it to take another position with Humana. Plaintiff was still employed by Humana at the time and was searching internally for a new position. Rather than award the vacant position to Plaintiff, who was second in the PITA rankings for this region, Humana decided to reorganize this territory again by adding Western Pennsylvania to it. Human then made Jennifer Rumbaugh, who was the WVB representative for Western Pennsylvania, the responsible sales executive for the revamped region. Rumbaugh was age 57 at the time. Robson Dep. at 93 (Doc. No. 39 at 93).

Plaintiff applied internally for one position with Humana before his termination became final - sales executive in the WVB Strategic Partnerships department. This position reported to Greg Dowling. Dowling selected four candidates to interview for this job, including Plaintiff and Rafferty. Dowling initially offered the position to Michael Rague, who was age 56 at the time. Like Sharp, Rague first accepted the position but shortly afterward declined it. Dowling then offered the position to Rafferty, who was age 44 at the time. Dowling testified that he offered the position to Rafferty because he was impressed with Rafferty's enthusiasm for the role and his prior experience and performance at several Fortune 100 companies. Dowling Dep. at 34 (Doc. No. 26, at 10). On the other hand, Dowling felt that Plaintiff was not enthusiastic about this particular job, but rather seemed more interested in simply obtaining a job with Humana. Id. at 23-24 (Doc. No. 26, at 7).

Plaintiff was terminated from Humana in June 2014. He was 63 years old at the time.

In October 2014, Plaintiff filed federal and state law age discrimination and retaliation claims against Humana in the Hamilton County Court of Common Pleas. Humana removed the case from state court in December 2014. In January 2015, Plaintiff filed an amended complaint which added a claim that Humana's reduction-in-force had a disparate impact on individuals over the age of 40.

Humana filed a motion for summary judgment at the conclusion of discovery which is now ready for disposition.

## II. Summary Judgment Standard of Review

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An assertion of a undisputed fact must be supported by citations to particular parts of the record, including depositions, affidavits, admissions, and interrogatory answers. The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation omitted).

The Court is not duty bound to search the entire record in an effort to establish a lack of material facts. Guarino v. Brookfield Township Trs., 980 F.2d 399, 404 (6th Cir. 1992). Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment," Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. Anderson, 477 U.S. at 250. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co. v.

Zenith Radio Corp., 475 U.S. 574, 586 (1986). The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. "If the evidence is merely colorable, . . . or is not significantly probative, . . . the court may grant judgment." Anderson, 477 U.S. at 249-50 (citations omitted).

### III. Analysis

As mentioned, in his amended complaint Plaintiff presents discrimination, retaliation, and disparate impact claims pursuant to the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and the Ohio Civil Rights Act, Ohio Rev. Code Chapter 4112. Plaintiff, however, has not proffered any evidence in support of, nor has he even discussed in his brief, his retaliation and disparate impact claims. The Court concludes, therefore, that he has abandoned those claims. Brown v. VHS of Mich., Inc., 545 Fed. Appx. 368, 372 (6th Cir. 2013) ("[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."). Thus, remaining for consideration are Plaintiff's claims that Humana discriminated against him on the basis of age when it terminated him during the reduction-in-force and when it failed to hire him for the sales executive position in the WVB Strategic Partnerships department.

The ADEA and the Ohio Civil Rights Act both make it illegal for employers to discriminate against employees over the age of 40 because of their age. Under the ADEA, the plaintiff must prove that his age was the "but for" cause of the employer's adverse employment action. Schoonmaker v. Spartan Graphics Leasing, LLC, 595 F.3d 261, 264 (6th Cir. 2010). Age discrimination claims under the Ohio Civil Rights Act are subject to the same standards as federal ADEA claims. Blizzard v. Marion Tech. College, 698 F.3d 275, 283 (6th Cir. 2012). The Court, therefore, can analyze Plaintiff's federal and state discrimination claims together.

A plaintiff can establish his discrimination claims through either direct or circumstantial evidence. Direct evidence does not require the fact finder to draw an inference that discrimination was the reason for the employer's adverse decision. Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003). Direct evidence, if believed by the factfinder, requires a conclusion that discrimination was the reason for the employer's decision. Id. If the plaintiff produces direct evidence of discrimination, the burden shifts to the employer to prove that it would have taken the same employment action even in the absence of a discriminatory motive. White v. Columbus Met. Housing Auth., 429 F.3d 232, 238 (6th Cir. 2005).

If the plaintiff does not have direct evidence of discrimination, he can prove his claims circumstantially through the familiar McDonnell Douglas burden-shifting framework. To establish a prima facie case of age discrimination, the plaintiff must adduce sufficient proof on the following elements: 1) he was a member of the protected class, (2) he was subjected to an adverse employment action, (3) he was qualified for the particular position, and (4) he was replaced by a substantially younger person or a substantially younger

7

person was treated more favorably than the plaintiff. Godfredson v. Hess & Clark, Inc., 173 F.3d 365, 371 (6th Cir. 1999). Where, as in this case, the plaintiff was terminated during a reduction-in-force, the fourth element is eliminated but then he must adduce additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons. Id. While the employer is not required to transfer the plaintiff to a new position, the employer will violate the ADEA if it transfers other displaced employees but fails to transfer the plaintiff to a new position because of his age. Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 351 (6th Cir. 1998).

If the plaintiff establishes a prima facie case of age discrimination circumstantially, the burden of production shifts to the employer to provide a legitimate, non-discriminatory reason for its decision. Id. at 350. If the employer meets that burden, the plaintiff must prove that the reasons proffered by the employer is a pretext for discrimination. Id.

Humana argues that it is entitled to summary judgment because there is no evidence that it terminated Plaintiff because of his age or that he was not placed in another position because of his age. Humana contends that there is no direct evidence of discrimination nor is there any circumstantial evidence to suggest that Plaintiff's age played any part in its implementation of the reduction-in-force or in its decision not to hire Plaintiff for the WVB Strategic Partnership position.

Plaintiff contends that he has adduced direct evidence of discrimination. Moreover, Plaintiff argues, there is circumstantial evidence supporting his claims of age discrimination. Plaintiff points out what he perceives to be many flaws in the PITA system, such as its use of subjective evaluation criteria and lack of standards for evaluators to follow to ensure

8

uniformity of application. Plaintiff contends that these flaws in the system suggest that age discrimination was the reason for his termination. Plaintiff also believes that Humana discriminated against him on the basis of age because it retained allegedly less-qualified employees, such as Sharp and Rafferty, whose sales performance was not as good as his, instead of him.

### A. Plaintiff Has Not Proffered Direct Evidence of Discrimination

As stated above, direct evidence compels a finding of discrimination if believed by the factfinder. In this case, Plaintiff contends that a statement that Schubart made in his deposition is direct evidence that age played a part in his PITA scores. Specifically, Plaintiff relies on Schubart's statement that he would have given Plaintiff a 2 in adaptability because he was from the "old school" of product delivery. Similarly, Schubart testified that he would have given Plaintiff a 3 in interpersonal skills, again because he was "old school" in that he could deal gruffly with people at times. Schubart Dep. at 51-52 (Doc. No. 32 at 51-52). Plaintiff argues that Schubart's reference to him as being "old school" is direct evidence of age discrimination. The Court disagrees.

First, "old school" is not a explicit reference to an individual's age. "Old school," rather, is generally understood to refer to someone who does things in a traditional, perhaps outdated, way. See, e.g. WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 822 (1987) (defining "old school" as "adherents of traditional policies and practices"). Since "old school" is not a direct reference to age, a factfinder would have to infer that Schubart was referring to Plaintiff's age when he said Plaintiff is "old school." DeBarr v. Cleveland Clinic Foundation, 918 F. Supp.2d 676, 684 (N.D. Ohio 2013). Therefore, "old school" is not direct evidence of age discrimination as a matter of law.

Plaintiff relies on Sander v. Gray Tele. Group, Inc., 478 Fed. Appx. 256, 266 (6th Cir. 2012), for the proposition that a comment that the plaintiff is "old school" is evidence of discriminatory bias. That much is perhaps true, but the Sander Court did not say that "old school" constitutes direct evidence of discrimination. The Court, rather, considered this comment in deciding whether the plaintiff had adduced sufficient evidence to rebut the employer's legitimate non-discriminatory reason for terminating him - in other words, in the context of considering whether the plaintiff could establish discrimination through circumstantial evidence. See id.

Sander is unhelpful to Plaintiff for two other reasons. The Court's entire discussion of pretext was dicta because it had already concluded that the plaintiff had failed to establish a prima facie case of discrimination because he voluntarily resigned his job. Id. at 261-63. Additionally, the Court concluded that this comment, although made by his supervisor, was not evidence of pretext because his supervisor did not have the authority to fire the plaintiff, and, moreover, the comment was too isolated and ambiguous to support a finding of age discrimination. Id. at 266. Similarly, as discussed next, Schubart's "old school" comment was temporally remote from Plaintiff's termination and was made by a person lacking authority to terminate his employment. Sander, therefore, does not help Plaintiff establish discrimination through direct evidence.

Second, Schubart's statement about Plaintiff being "old school" was not made in the context of the PITA but rather occurred in a deposition some fifteen months after the reduction-in-force happened. In other words, Schubart's statement was not made in connection with the adverse employment action nor was there any temporal proximity between the adverse employment action and the statement. Moreover, Schubart was not

10

a decisionmaker during the reduction-in-force. Thus, Schubart's statement does not constitute direct evidence that Plaintiff's age was the reason for his PITA scores. See Bush v. Dictaphone Corp., 161 F.3d 363, 369 (6th Cir.1998)("Statements by non-decisionmakers, or statements by decisionmakers unrelated to the decisional process itself can not suffice to satisfy the plaintiff's burden of demonstrating animus.")(internal brackets and quotation marks omitted).

This is true, even if, as Plaintiff contends, Sinclair consulted with Schubart in completing Plaintiff's PITA evaluation. Assuming that Schubart's opinions influenced Sinclair's ratings, Schubart's assessment that Plaintiff was "old school" in adaptability and interpersonal skills was tied to specific aspects of his performance rather than to stereotypical notions about individuals over the age of 40. Schubart's comments, therefore, do not reflect discriminatory bias. Cf. Conley v. U.S. Bank Nat'l Ass'n, 211 Fed. Appx. 402, 406 (6th Cir. 2006) (finding that supervisor's comments that the plaintiff "'lacked initiative,' 'was just putting in his time . . . [and] not setting the world on fire,' and was not a 'go-getter'" were not indicative of age discrimination because they were performance-based observations that could apply to employees of any age).

Third, and finally, Schubart was not, as Plaintiff contends, a "cat's paw" for Humana's alleged discriminatory treatment of him. Under the "cat's paw" theory of liability, the discriminatory animus of the plaintiff's supervisor is imputed to an otherwise unbiased decisionmaker, making the employer liable for the non-decisionmaker's discrimination. Chattman v. Toho Tenax Am., Inc., 686 F.3d 339, 351 (6th Cir. 2012). In order to succeed on this theory, however, the plaintiff must prove that his supervisor intended to cause an adverse employment action and that the supervisor's act is the proximate cause of the

employer's adverse employment action. Id. In this case, Plaintiff's cat's paw theory fails because he has not adduced any evidence that by referring to Plaintiff as "old school," Schubart intended to cause any adverse employment consequences to Plaintiff. Indeed, he could not have had such an intention since the alleged discriminatory statement was made long after the reduction-in-force occurred. Additionally, even assuming that Schubart consulted with Sinclair on Plaintiff's PITA, Plaintiff has not adduced evidence indicating that Schubart's assessment of him resulted from age-based animus. In fact, Plaintiff argues elsewhere in his brief that Schubart would have given him a higher overall PITA score than Sinclair, Doc. No. 34, at 4, 29, essentially defeating his argument that Schubart was the cat's paw for his alleged discriminatory PITA score.

Accordingly, Plaintiff's contention that he has direct evidence that his age was the "but for" cause of his termination is not supported by the record.

### B. Plaintiff's Circumstantial Case of Age Discrimination Fails

Humana argues that Plaintiff cannot establish a prima facie case of age discrimination relative to his termination in the reduction-in-force because he has not provided additional direct, circumstantial, or statistical evidence tending to indicate that he was discharged because of his age. The Court agrees.

Plaintiff's basic contention in this case is that he should have been ranked higher in the PITA process. For instance, Plaintiff contends that he should have received higher scores for productivity, because of his sales record, and for his attendance, which he claims was essentially perfect. Even if Plaintiff received unfair or inaccurate scores in some categories in his PITA evaluation, he has not adduced evidence that Humana actually manipulated the process in order to disadvantage him because of his age. Cf. Beard v.

12

Seagate Tech., Inc., 145 F.3d 1159, 1169-70 (10th Cir. 1998) (stating that the plaintiff must prove actual manipulation of the ranking system, not just an opportunity to manipulate it, in order to show that employer's reason for laying off plaintiff is pretextual). Moreover, this is not a case like Skalka v. Fernald Env. Rest. Mmgt. Corp., 178 F.3d 414, 421-22 (6th Cir. 1999), where age discrimination was established because the employer laid off the plaintiff despite the fact that he ranked the highest among his peer group under the employer's scoring system. The Skalka Court concluded that the employer's deviation from its reduction-in-force procedure was evidence of pretext. Id. at 422. In this case, however, Plaintiff has not shown that Humana deviated from the PITA policy in order to terminate him. While Plaintiff contests his actual PITA score, it is undisputed that Humana retained the employee with the highest PITA assessment to cover the new Cincinnati/Dayton/Northern Kentucky region. Plaintiff could have shown pretext under Skalka if he had been ranked higher than Sharp or if Humana had retained Rafferty instead of him, but that is not what happened.

The fact that Humana used subjective criteria in the PITA process does not show that age was the reason for Plaintiff's termination in the reduction-in-force. The employer's use of subjective evaluation criteria does not establish pretext, particularly in a reduction-in-force case, where the plaintiff must prove that age, and not the reduction-in-force, was the real reason for his termination. Beck v. Buckeye Pipeline Serv., 501 Fed. Appx. 447, 451 (6th Cir. 2012).

Plaintiff contends that he was more qualified than both Sharp and Rafferty because his sales productivity was much better than theirs. Plaintiff, therefore, argues that age played a part in the PITA process because Humana decided to retain less qualified

13

employees than him.  Plaintiff, however, "cannot rebut an employer's proffered explanation by proposing [his] own rubric of relevant qualifications and testing the employer's conduct against it." Trapp v. TSS Tech., Inc., 485 Fed. Appx. 757, 760 (6th Cir. 2012).  In this case, sales productivity was but one part of the PITA assessment and, overall, Sharp scored higher in the rankings than Plaintiff.  Thus, according to the PITA assessment, Sharp was more qualified than Plaintiff for the remaining position despite Plaintiff's better sales production.  It may be true that Plaintiff's PITA scores were unfairly low or that Sharp's scores were unfairly high, but Plaintiff has not adduced evidence suggesting that his age was taken into consideration in developing his scores or that Sinclair and Willis colluded to disadvantage him in the PITA process.  Indeed, the evidence is that Sinclair and Willis did not consult with each other during the PITA process.  Sinclair Dep. at 69 (Doc. No. 28, at 18); Willis Dep. at 47, 73 (Doc. No. 29, at 13, 19).

Plaintiff's statistical evidence does not indicate that age played a part in his termination in the reduction-in-force.  While Plaintiff has apparently shown a discrepancy between the ages of employees retained and employees eliminated, he has not shown that the difference is statistically significant, in other words, that something other than random chance, such as age, accounts for the difference.  Cf. Scott v. Goodyear Tire & Rubber Co., 160 F.3d 1121, 1128-29 (6th Cir. 1998)(plaintiff's statistical evidence indicated that age played a part in reduction-in-force; there was a seven-year difference between employees eliminated and retained and plaintiff's experts testified that there was less than a 1% chance that the discrepancy was due to randomness).[3]

---

[3] Additionally, Plaintiff does not explain how he arrived at his numbers.  Doc. No. 34, at 33-34.  Plaintiff cites his exhibits 14 and 15 for the proposition that the average age of

14

Plaintiff also argues that, based on his PITA ranking, he should have been selected for the revised Western Pennsylvania/Southern Ohio/Northern Kentucky region after Sharp decided to take another position within Humana. Since he was not, Plaintiff contends that Human's violation of the PITA procedures shows discriminatory animus. The record establishes, however, that the person Humana selected for the position, Jennifer Rumbaugh, was 57 years old at the time, and thus not substantially younger than Plaintiff as a matter of law. Robson Dep. at 93 (Doc. No. 39, at 93); Grosjean v. First Energy Corp., 349 F.3d 332, 340 (6th Cir. 2003)("[I]n the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between and employee and a replacement is not significant."). Therefore, even assuming that Humana violated the PITA protocol by not selecting the next highest employee - Plaintiff - for the revised region, the legally insignificant age difference between Plaintiff and Rumbaugh shows that age was not the reason Plaintiff was not chosen for the position.

Schubart's comment that Plaintiff was "old school," in the context of this case, does not circumstantially suggest that Humana's reason for eliminating Plaintiff in the reduction-

---

WVB sales representatives eliminated was 49 while the average age of WVB sales representatives retained was 41. Exhibit 14 (Doc. No. 34-2 at 26) lists five employees, and their ages, who are "Currently Eligible for Severance Benefits Based on the Current Staff Adjustments" and five employees, and their ages, who are "NOT Currently Eligible for Severance Benefits Based on the Current Staff Adjustments." The exhibit does not indicate whether all of these of employees were retained or eliminated or whether half were retained and half were eliminated. In any event, the average age of both groups is 45. Exhibit 14, therefore, does not jibe at all with either of the ages Plaintiff recites in his brief. Plaintiff's citation of Exhibit 15 only refers back to Exhibit 14. See Doc. No. 34-3, at 1. It is impossible to discern what evidence Plaintiff is using to establish the ages of his two comparator groups. Since Plaintiff has not explained his comparison at all, and it is otherwise indecipherable from the exhibits he cites, his statistical evidence fails for this reason as well.

15

in-force was because of his age. As discussed above, Schubart's comment was not made in connection with the employment decision nor was it made in temporal proximity to the employment decision. Moreover, Schubart was not responsible for grading Plaintiff in the PITA process and, therefore, his assessment of Plaintiff within the PITA framework was completely hypothetical. Consequently, Schubart's "old school" comment lacks probative value. Finally, Plaintiff concedes that Schubart would have given him a better PITA score than Sinclair if Schubart had been responsible for grading him. It is doubtful, therefore, that Schubart's opinion of Plaintiff's performance was influenced by Plaintiff's age. Consequently, Schubart's comment is not the additional direct or circumstantial evidence Plaintiff needs to establish a prima facie case of discrimination in a reduction-in-force case

Plaintiff is probably correct that Humana's reduction-in-force procedure did not result in a fair comparison of his skills versus his competitors' skills because the evaluators did not apply the relevant factors in a consistent manner, or in his particular case, because Sinclair also evaluated Plaintiff on less-than-complete information. Plaintiff, however, has not provided any basis for a reasonable juror to conclude that the rating discrepancies between himself and Erica Sharp was due to age bias. The mere fact that Humana used a flawed reduction-in-force process is insufficient for a juror to conclude that discrimination was the reason for Plaintiff's termination. Skelton v. Sara Lee Corp., 249 Fed. Appx. 450, 462 (6th Cir. 2007).

In summary, the record does not permit a reasonable juror to conclude that Plaintiff was terminated in the reduction-in-force because of his age.

As to the WVB Strategic Partnerships sales executive role, Plaintiff's greater sales productivity did not per se make him more qualified than Rafferty for the position. As

16

Dowling explained in his deposition, he valued Rafferty's prior sales experience for Fortune 100 companies, but more importantly, Rafferty displayed an enthusiasm for the new position that Plaintiff did not. Dowling was certainly entitled to discretion in making that decision and Plaintiff has not come forward with any evidence to suggest that age played any part in Dowling's hiring decision. See Bender v. Hecht's Dept. Stores, 455 F.3d 612, 627 (6th Cir. 2006) (noting that the court should not second guess the employer's business judgment unless it was "ridden with error"); Browning v. Department of Army, 436 F.3d 692, 698 (6th Cir. 2006) ("[T]his court [has] afforded great flexibility to employers when selecting management personnel[.]"). Indeed, the fact that Dowling initially hired Rague (who was barely substantially younger than Plaintiff)[4] for the job strongly indicates that age was not the reason that he did not then select Plaintiff for the position. Cf. Buhrmaster v. Overnite Transp. Co., 61 F.3d 461, 465 (6th Cir. 1995)("An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class.").

Plaintiff also argues that he should have received the sales executive position in the WVB Strategic Partnership department because his PITA score was higher than Rafferty's. Plaintiff overlooks, however, that Dowling did not review the applicants' PITA scores in deciding who to hire for that position, nor is there any evidence that he was required to do so. Dowling Dep. at 53-56 (Doc. No. 26, at 14-15); see, e.g., Trapp v. TSS Tech., Inc., No. 1:09-CV-763, 2011 WL 14366, at *8 (S.D. Ohio Jan. 3, 2011)(Beckwith, S.D.J.) (finding that

---

[4] Rague was 56 when Dowling hired him and Plaintiff was age 63 at the time - a seven-year age difference. See supra, at 15 (explaining that a six-year age difference is not substantial as a matter of law).

17

plaintiff could not establish triable issue of fact on pretext by picking points of comparison that were not relevant to the employer's decision). The PITA process was only implemented to decide who would be eliminated, it had nothing to do whether the employee would be hired into a different position by Humana. See Plaint. Ex. 11 (Doc. No. 34-2, at 21 (Humana Work-Life Policy & Procedure explaining that employees are selected for termination in the following sequence - first, contingent workers, second, variable staffing pool and limited term associates, third, point-in-time performance assessment). Consequently, the fact that Plaintiff's PITA score was higher than Rafferty's does not show that Dowling's reason for hiring Rafferty instead of Plaintiff was because of Plaintiff's age.

In summary, the record does not permit a reasonable juror to conclude that Humana failed to redeploy Plaintiff to another position because of his age.

## Conclusion

For the reasons stated, no reasonable juror could conclude that Humana discriminated against Plaintiff because of his age. Additionally, Plaintiff abandoned his disparate impact and retaliation claims. Accordingly, Defendants' motion for summary judgment is well-taken and is **GRANTED**. The amended complaint is **DISMISSED WITH PREJUDICE. THIS CASE IS CLOSED.**

　　**IT IS SO ORDERED**

Date January 19, 2016　　　　　　　　　　　　s/Sandra S. Beckwith
　　　　　　　　　　　　　　　　　　　　　　Sandra S. Beckwith
　　　　　　　　　　　　　　　　　　Senior United States District Judge